UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JUDGE CASTEL

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

ELITE PERFORMANCE FUND LTD. and
DISTRESSED/HIGH-YIELD TRADING
OPPORTUNITIES FUND,

08 CV 2041

: Docket No.: _____

                 Plaintiffs,

:

       – against –

:

**COMPLAINT**

VITEOS FUND SERVICES LTD.,

:

                 Defendant.

:

:

RECEIVED
FEB 29 2008
U.S.D.C. S.D. N.Y.
CASHIERS

:

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Plaintiffs ElitePerformance Fund Ltd. and Distressed/High-Yield Trading Opportunities Fund (collectively, the "Funds" or "Plaintiffs"), by their attorneys Katten Muchin Rosenman LLP and Kurzman Karelsen & Frank, LLP, allege as follows:

## NATURE OF THE ACTION

1.     This is an action for damages arising out of Defendant VITEOS Fund Services Ltd.'s ("Viteos") failure to properly perform its duties under an accounting services agreement dated July 1, 2006 (the "Agreement") entered into by the Funds and Viteos.

2.     Pursuant to the Agreement, Viteos agreed to provide, *inter alia*, fund accounting, and certain administrative services, including transfer agent services to the Funds.

3.     According to the Agreement, Viteos was responsible for, *inter alia*, computing the Funds' month-end net asset value ("NAV") and handling subscriptions, redemptions and

transfers including Euro denominated Shares ("EUR Shares") and United States Dollar denominated Shares ("USD Shares") for the Funds' investors.

4.     In the course of effectuating a transfer of EUR Shares between Fund investors, Viteos erroneously, and with reckless disregard of specific, contrary written instructions, recorded the transferred EUR Shares as USD Shares ("the Transfer").

5.     As a direct result of Viteos' breach of contract, gross negligence and reckless indifference in converting the EUR Shares to USD Shares while effectuating this transfer, the Funds suffered damages in excess of $578,000.00.

6.     Following the Funds' discovery of Viteos' errors, the Funds requested that Viteos reimburse the cost incurred by the Funds to correct for the market losses and to avoid severe reputational damage; however, Viteos has refused to honor its obligations.  Thus, the Funds seek $578,000.00 in damages, plus interest and costs.

## PARTIES

7.     Plaintiff ElitePerformance Fund Ltd. ("Elite") is a foreign corporation incorporated under the laws of the British Virgin Islands and maintains its principal place of business in the State of New York.

8.     Plaintiff Distressed/High-Yield Trading Opportunities Fund ("Distressed") is a foreign corporation incorporated under the laws of the British Virgin Islands and maintains its principal place of business in the State of New York.

9.     Upon information and belief, Defendant, Viteos, is a foreign limited liability company organized and existing under the laws of India and maintains its principle place of business in the State of New Jersey.

## JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) and (2) because the action is between citizens of different states and citizens of foreign states and the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs.

11.     This Court has personal jurisdiction over Viteos because Viteos regularly does, solicits, and transacts business in New York, including without limitation, the Agreement, which is expressly governed by New York law.  Further, Viteos' conduct caused damage to the Funds in New York, where plaintiffs maintain their principal place of business.  Viteos derives substantial revenue from its activities in New York and from interstate and international commerce.

12.     Venue in this District is appropriate pursuant to 28 U.S.C. § 1391, as the Defendant is an alien corporation and because a substantial part of the events and omissions giving rise to the claims herein occurred in the Southern District of New York, the Funds are situated in the Southern District of New York.  In addition, pursuant to the Agreement, the parties consented and submitted exclusively to the jurisdiction of the New York state and federal courts within the City of New York.

### FACTUAL BACKGROUND

13.     The Funds are involved in the business of international currency hedging for their clients on a monthly basis in order to protect the EUR class investors who are invested in the USD denominated Fund from any capital losses due to the price depreciation of the U.S. Dollar in relation to the Euro.

14.     The currency hedging is executed by purchasing forward contracts for Euros as against the USD at a price known as the forward price. By purchasing forward contracts, the Funds can protect the present value of the Euro from exchange rate volatility for its clients by locking in an exchange rate on the date of the purchase instead of a volatile currency exchange rate in the future that could significantly devalue its purchasing power.

15.     Critical to the Funds properly conducting their hedging activities is the determination of the Net Asset Value of the Funds as the Funds place the hedge based specifically on the total amount of Euros in the Funds.

<u>**The Agreement**</u>

16.     On or about  July 1, 2006 , the Funds and Viteos entered into the Agreement whereby the Funds employed Viteos as their agent to provide the Funds with certain accounting and transfer services. (A copy of the Agreement is attached as  Exhibit A.)

17.     Pursuant to Article 1 of the Agreement, Viteos agreed to provide certain services to the Funds "in connection with the Funds' business and operations" and as further described in Exhibit A of the Agreement (the "Services").

18.     The Services included, *inter alia*, month-end portfolio accounting, monthly financial statements, computation of the month-end NAV, and handling subscriptions, redemptions and transfers for the Funds' investors.

19.     In accordance with Article 4 of the Agreement, the Funds paid Viteos a monthly service fee in consideration for the Services Viteos agreed to provide to the Funds.

20.     Pursuant to Article 7 of the Agreement Viteos was to "at all  times exercise reasonable care and diligence and act in good faith in the performance of it duties . . ." under the Agreement.

21.     Pursuant to Article 10 of the Agreement, the Funds were to provide "Proper Instructions to Viteos in regard to matters affecting its duties under [the] Agreement." "Proper Instructions" "mean[s] instructions received by Viteos from the Funds or any person duly authorized by the Funds."

22.     Article 11 of the Agreement states that the Agreement "shall continue in full force and effect for a period of two years."

### Actions Committed by Viteos

23.     On February 9, 2007 and February 20, 2007, an investor in the Funds, UBS (Luxembourg) S.A. (the "Transferor"), submitted Notices of Transfer of Shares (the "Notices") instructing the Funds to transfer 482.823 and 340.019 EUR Shares, respectively (for a total transfer of 822.842 EUR Shares), to EFG Bank (the "Transferee" and collectively with the Transferor, the "Transfer Parties"), which transfer was accepted and administered by Viteos as part of the Services.

24.     The Notices were Proper Instructions as that term is defined in Article 10 of the Agreement.

25.     On March 1, 2007, Viteos provided the Transfer Parties with a Transfer Contract and Transaction Confirmation for 822.842 EUR Shares (the "March 1 Transfer Contract").

26.     The March 1 Transfer Contract was for the transfer of EUR shares only.

27.     In direct contradiction of the written Proper Instructions, Viteos erroneously and recklessly switched from EUR shares to USD shares.

28.     On April 4, 2007, Viteos provided HSBC Securities Services (Bermuda) Limited ("HSBC"), another administrator to the Funds, its documentation regarding the March 1 Transfer Contract.

29.     On April 11, 2007 and April 17, 2007, HSBC inquired about the nature of the March 1 Transfer Contract.  Viteos failed and/or refused to respond both times.

30.     On April 27, 2007, Viteos specifically requested that the Transferee "confirm that the transfer was indeed a transfer and not a switch from EUR to USD [Shares]."

31.     On April 30, 2007, Transferee confirmed via e-mail that the transaction was to be a transfer of EUR Shares and not a switch from EUR Shares to USD Shares.

32.     Notwithstanding the communications described above, on May 14, 2007, Viteos provided the Transfer Parties with a "revised" Transfer Contract and Transaction Confirmation, which references a Final Contract Note.  The Final Contract Note states that 822.842 EUR Shares were transferred from Transferor and that 1,032.064 US Dollar-denominated Class H shares were transferred to Transferee (the "May 5 Transfer Contract").

33.     The switch was neither the transfer Viteos was instructed to perform nor the transfer intended by the Transfer Parties.

34.     The Final Contract Note directly contradicts the Transferor's Authorized Transfer Notice, Viteos' March 1 Transfer Contract and the Transferee's April 30 e-mail confirming that the Transferee was to receive EUR Shares.

35.     As a result of Viteos' gross negligence and reckless disregard of Proper Instructions, the Funds relied on an incorrect NAV and thus failed to hedge the appropriate amount of USD against Euros.

36.     As a result of Viteos' gross negligence and reckless disregard of Proper Instructions, the Funds suffered damages in excess of $578,000, including its expenses involved in their investigation of this matter.

37.     As a result of Viteos' gross negligence and reckless disregard of Proper Instructions, the Funds were forced to recalculate and republish NAVs for March and April 2007 and to put the transferee in  the place it would have been in had Viteos not ignored the specific instructions to transfer the EUR Shares rather than switch to USD shares.

38.     As a result of Viteos' gross negligence and reckless disregard of Proper Instructions, the Funds have suffered an unquantifiable loss of goodwill and damage to the Funds' reputation.

39.     In August, 2007, upon discovering that Viteos had recklessly disregarded the Proper Instructions, the Funds made a timely request that Viteos reimburse the Funds for the market loss for covering the insufficient hedge and the cost for the recalculation and republication of the NAV.

40.     Despite the Funds' timely request, Viteos did not reimburse the Funds for the losses and costs.

### FIRST CLAIM FOR RELIEF
**(Breach of Administrative Services Agreement)**

41.     Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 40 as if fully set forth herein.

42.     The Agreement is an enforceable contract between the Funds and Viteos.

43.     The Funds have duly performed their obligations under the Agreement.

44.     Through its grossly negligent conduct Viteos breached the Agreement and has caused, and continues to cause Plaintiffs to incur substantial losses and costs arising from such breach.

45.     As a result of Viteos' breach, the Funds have incurred damages in the amount of at least $578,000, the exact amount to be determined at trial, plus interest and costs.

## SECOND CLAIM FOR RELIEF
### (Negligence)

46.     Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 45 as if fully set forth herein.

47.     Viteos had a duty to exercise reasonable care in the performance of its duties under the Agreement including administering and effectuating Proper Instructions received from the Funds.

48.     Viteos failed to exercise reasonable care through its reckless disregard of the Proper Instructions it received by the Funds to effectuate the March 1 Transfer Contract.

49.     Despite the fact that Viteos knew or should have known that switching from EUR shares to USD shares would cause harm to the Funds, it recklessly disregarded the Proper Instructions that it received from the Funds to effectuate the March 1 Transfer Contract in EUR Shares only.

50.     The foregoing conduct of the Defendant was carried out with reckless indifference and disregard for the foreseeable and natural consequences of that action and the great harm it would cause to the Plaintiffs.

51.     Through its grossly negligent conduct Viteos caused, and continues to cause, Plaintiffs to incur substantial losses and costs arising from such negligence.

52.    The above-stated actions and the results thereof were in no way due to any negligence on the part of the Plaintiffs contributing thereto, but were caused by the gross negligence of the Defendant in the performance of its duties.

53.    The Funds have been damaged by virtue of the foregoing negligence of Viteos in an amount not less than $578,000, the exact amount to be determined at trial, plus interest and costs.

**THIRD CLAIM FOR RELIEF**
**(Breach of Fiduciary Duty)**

54.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 53 as if fully set forth herein.

55.    Viteos, as agent, owed a fiduciary duty to the Funds, its principal.

56.    Viteos breached its fiduciary duty to the Funds by disregarding the Proper Instructions it received by the Funds to effectuate the March 1 Transfer Contract, by repeatedly ignoring requests for confirmation that the transaction was to be a transfer of EUR Shares rather than a switch from EUR Shares to USD Shares and by submitting a revised transfer contract in an attempt to justify its erroneous actions.

57.    Viteos' actions precluded the Funds from fulfilling their obligations to the Funds' clients to properly and timely advise them of the NAV value of the Funds and to protect the clients from exchange rate volatility.

58.    Viteos failed in good faith to use their best efforts to fulfill their duties set forth under the Agreement.

192194.1

59.    Viteos' breach of its fiduciary obligations caused the Funds to incur damages in an amount not less than $578,000, the exact amount to be determined at trial, plus interest and costs.

WHEREFORE, Plaintiffs demand judgment as follows:

(a)    On the first claim for relief, an award of money damages, including compensatory and consequential damages, in an amount not less than $578,000.00 plus expenses in an amount to be determined at trial, plus interest from the date of entry until the date of satisfaction at the highest rates allowed by law;

(b)    On the second claim for relief, an award of money damages, including compensatory and consequential damages, in an amount not less than $578,000.00 plus expenses in an amount to be determined at trial, plus interest from the date of entry until the date of satisfaction at the highest rates allowed by law;

(c)    On the third claim for relief, an award of money damages, including compensatory and consequential damages, in an amount not less than $578,000.00 plus expenses in an amount to be determined at trial, plus interest from the date of entry until the date of satisfaction at the highest rates allowed by law; and

(d)    such other and further relief as may be just, proper and equitable.

Dated: New York, New York
       February 28, 2008

192194.1

KATTEN MUCHIN ROSENMAN LLP

By:_____
        Jay Shapiro (JS 2499)
        Catherine G. Patsos (CP 5545)


575 Madison Avenue
New York, New York 10022
(212) 940-8800
Attorneys for Plaintiffs


KURZMAN KARELSEN & FRANK, LLP


By:_____
        Joseph Tucker (JT2006)

230 Park Avenue
New York, New York 10169
(212) 867-9500
Attorneys for Plaintiffs

192194.1

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

ELITE PERFORMANCE FUND LTD. and
DISTRESSED/HIGH-YIELD TRADING
OPPORTUNITIES FUND,                              :     **Docket No.:** _____

                                      Plaintiffs,          :

              – against –          :     **JURY DEMAND**

VITEOS FUND SERVICES LTD.,                       :

                                  Defendant.          :

                                             :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

       Plaintiffs   Elite   Performance   Fund,   Ltd.   and   Distress/High-Yield   Trading

Opportunities Fund demand a trial by jury of all issues in the above referenced matter.

Dated: New York, New York
       February 29, 2008

                                  KURZMAN KARELSEN & FRANK, LLP

                                By: _____
                                       Joseph Tucker (JT2006)

                                       230 Park Avenue
                                       New York, New York 10169
                                       (212) 867-9500
                                       Attorneys for Plaintiffs

Exhibit A

**VITEOS FUND SERVICES LTD**
**ADMINISTRATIVE SERVICES AGREEMENT**

AGREEMENT made as of the 1st day of July, 2006 by and between Viteos Fund Services Ltd. a Cayman Islands exempted company and having its registered office at P.O. Box 1234 GT, Queensgate House, South Church Street, George Town, Grand Cayman, Cayman Islands ("Viteos"), and ElitePerformance Fund Ltd. Class H Shares and Distressed/High-Yield Trading Opportunities Fund Ltd. (collectively, the "Funds") having its registered offices at c/o S-HR&M Financial Services Ltd., Kingston Chambers, PO Box 173, Road Town, Tortola, British Virgin Islands.

W I T N E S S E T H:

WHEREAS, Viteos is in the business of providing trade support, bookkeeping, fund accounting, and other fund administration services to investment pools and investment managers and advisers; and

WHEREAS, the Funds are in the business of investing in securities, all as is more fully described in the Funds' currently effective prospectus and statement of additional information (the "Prospectus"), a copy of which has been received and reviewed by VITEOS; and

WHEREAS, the Funds require trade support, bookkeeping, fund accounting and certain other fund administration services; and

WHEREAS, the Funds desire to retain Viteos to perform the fund accounting and other administration services as described herein, and wish to enter into this Agreement in order to set forth the terms and conditions upon which Viteos will render and implement the services specified herein.

NOW, THEREFORE, in consideration of the premises and mutual covenants contained herein and other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the Parties hereto agree as follows:

(1)     Duties of Viteos.

Viteos agrees to provide to the Funds the services (the "Services") listed on Exhibit A in connection with the Funds' business and operations on a parallel basis from June 1, 2006 and live from July 1, 2006

(2)     Duties of the Funds.

(a)     The Funds shall be responsible for accurately and timely supplying Viteos with complete financial and other information in order for Viteos to provide the Services, including timely prior notice to Viteos of any modification in the manner in which calculations are to be performed and of any amendments or supplements to the Prospectus.

(b)     The Funds shall be responsible for the accurate and timely supply of complete financial information to Viteos by any third party retained by the Funds in order for Viteos to provide the Services set forth in Exhibit A.

(c)     The Funds acknowledge that Viteos is not a public accounting or auditing firm, is not a fiduciary of a public accounting or auditing firm, and does not provide public accounting or auditing services or advice.

(d)     The Funds, and not Viteos, shall pay all commissions, margins, option premiums, interest charges, floor commissions and fees, and other transaction costs and expenses charged and incurred by broker-dealers and their agents (collectively, "Funds' Brokers").

(3)     Security Pricing and Valuation of the Portfolio

The Funds shall provide on a periodic basis and not later than monthly basis the the unit value for each security position in the Funds portfolio as at the last date of each month-end. The Funds will provide to Viteos an Agreed Upon Procedures Memorandum from the Auditor of the Funds related to the Auditors review of the unit value of each security position transmitted to Viteos that Viteos will rely upon. Viteos shall consider the unit value for each security position in the portfolio to prepare the monthly financial statements and generate the NAV, investor allocation, etc for the Funds. The Funds shall specifically indemnify and keep Viteos indemnified against any loss, liability, claim or expense (including reasonable attorneys' fees and disbursements) suffered or incurred by Viteos including, without limitation, any liability or expense suffered or incurred as a result of the acts, errors or omissions of the Funds in providing the unit value for each security position in the Funds' portfolio in addition to the indemnification as per Sections 7 and 9 below.

(4)     Compensation.

(a)     In consideration of the Services to be rendered to the Funds by Viteos under this Agreement, the Funds shall pay Viteos a monthly service fee as agreed to by Viteos and the Funds in writing from time to time (the "Service Fee") as shown in Exhibit B. The term "Net Assets" shall mean total assets less total liabilities, including unrealized profits and losses on open positions, accrued income and expense, calculated in accordance with U.S. generally accepted accounting principles consistently applied as per the accrual method of accounting, as more fully described in the Funds' Prospectus.

(b)     On the first business day of each month, Viteos shall forward to the Funds an itemized statement setting forth the calculation of the Service Fee due to Viteos in respect to the prior month, if the Service Fee for such month is based upon the minimum monthly fee, the Service Fee will be due and payable by the Funds to Viteos immediately upon receipt of the itemized statement. If the Service Fee for such month is based upon a percentage of "Net Assets" as act forth in Section 3(a) above, the Service Fee will be due and payable by the Funds to Viteos on the next business day following receipt of the itemized statement. If subsequently the amount of the Service Fee is revised or recalculated either as a result of (i) the recalculation of "Net Assets" or (ii) objections made by the Funds to such statement within ten (10) business days of the receipt thereof, the Service Fee for the current month shall include appropriate adjustments to reflect the change in the Service Fee for the prior month. If the Funds do not object to such itemized statement within ten (10) business days of the receipt thereof, such statement shall for all purposes be deemed to be conclusively correct.

(c)   In addition, on the first business day of each month, Viteos shall forward to the Funds an itemized statement of all out-of-pocket expenses (e.g., postage, telefax charges) incurred by Viteos on behalf of the Funds in respect of such month. If the Funds do not object to such statement within five (5) business days of the receipt thereof, such statement shall for all purposes be deemed to be conclusively correct, and the Funds shall pay the amount shown thereon to Viteos within ten (10) business days after receipt of such statement. If the Funds object to such statement within five (5) business days of the receipt thereof, the Funds shall pay the portion of the amount shown in the statement not in dispute, and the Funds and Viteos shall use their best efforts to resolve the disputed amount(s) as soon as possible.

(5)   Non-Exclusivity : The Services provided by Viteos hereunder are not exclusive. Viteos currently renders and may render bookkeeping, fund accounting, trading support and other fund administration services, as well as provide other services, software and goods, to other clients during the term of this Agreement, and such services and goods may be the same or different or may rely on the same or different methods and programs as are utilized in the performance of the Services for the Funds.

(6)   Confidentiality

The Funds expect to disclose to Viteos confidential accounting, customer, and other business records pursuant to the terms of this Agreement. Viteos agrees to maintain the confidentiality of all such information ("Confidential Information") by appropriately instructing employees and others who may be accorded access to such information by Viteos, and by not using same for any purpose other than in fulfillment of Viteos' obligations under this Agreement.

Confidential Information shall not include any information that (i) is or becomes public knowledge through no act or omission of the receiving person, (ii) is publicly disclosed by its proprietor, (iii) is otherwise lawfully obtained from third parties after reasonable inquiry regarding their authority to possess and disclose same, (iv) is independently developed by the recipient in a manner that can be shown not to have used the information received, (v) is known by the recipient on the date hereof other than by reason of discussions with or disclosures by the parties in negotiating this Agreement, or (vi) is or becomes known as a result of another transaction between the parties hereto, but information referred to in this sub clause (vi) shall be subject to any limitations imposed on its use and disclosure by that transaction.

(7)   Liability.

Viteos shall at all times exercise reasonable care and diligence and act in good faith in the performance of its duties hereunder, provided, however, that Viteos shall assume no responsibility and shall be without liability for any loss, liability, claim or expense suffered or incurred by the Funds unless caused solely by its own fraud, willful default, gross negligence or willful misconduct or that of its agents or employees. Viteos shall be responsible for the performance of only such duties as are set forth in this Agreement and shall have no responsibility for the actions or activities of any other party, including other service providers to the Funds.

Without in any way limiting the generality of the foregoing, Viteos shall in no event be liable for any loss or damage arising from causes beyond its reasonable control, including, without limitation, delay or cessation of services hereunder or any damages to the Funds resulting there from as a result of any work stoppage, power or other mechanical failure, computer virus, natural disaster, governmental action, revolution, riots, act of public enemy, acts of terrorism, national emergency, fire, communications disruption or other impossibility of performance.

Viteos shall not be liable for any special, indirect, incidental, or consequential damages of any kind whatsoever (including, without limitation, attorneys' fees) in any way due to the Funds' use of the services provided hereunder or the performance of or failure to perform Viteos' obligations under this Agreement, whether or not the possibility of such damage was disclosed to Viteos or could have been reasonably foreseen by Viteos and whether asserted on the basis of contract, tort (including negligence and strict liability) or otherwise.

Viteos is authorized and instructed to rely upon the information it receives from the Funds or any third party agent authorized by the Funds to provide such information to Viteos. The Funds and any third party agents from which Viteos shall receive or obtain certain records, reports and other data included in the Services provided hereunder are solely responsible for the contents of such information, including, without limitation, the accuracy thereof. Viteos has no responsibility to review, confirm or otherwise assume any duty with respect to the accuracy or completeness of any such information and shall be without liability for any loss or damage suffered by the Funds as a result of Viteos' reasonable reliance on and utilization of such information, Viteos shall have no responsibility and shall be without liability for any loss or damage caused by the failure of the Funds or any third party agent to provide it with the information required. Viteos shall have no liability and shall be kept indemnified by the Funds against any loss, liability, claim or expense resulting from the offer or sale of shares in violation of any requirement under any applicable securities laws or regulations including, but not limited to, the laws of the United States.

Except as otherwise expressly agreed to in writing Viteos, Viteos shall have no obligation to review, monitor or otherwise ensure compliance by the Funds with the investment policies, restrictions or guidelines applicable to it or any other term or condition of the Prospectus.

(8)     Representations and Warranties.

(a)     To its knowledge, the Funds hereby represent and warrant to the best of their knowledge, respectively, to Viteos as follows:

(i)     To their knowledge, the Funds have full power and authority and are permitted by applicable law to enter into this Agreement and to conduct its business as described in this Agreement.

(ii)     To their knowledge, the performance of the obligations under this Agreement by the Funds will not conflict with, violate the terms of, or constitute a default under any indenture, mortgage, deed of trust, loan agreement, management or advisory agreement, or other agreement or instrument to which the Funds are a party or by which any such person is

bound or to which any of the property or assets of any such person is subject, or any order, rule, law, regulation, or other legal requirement applicable to any such person or to the property or assets of any such person.

(iii) To their knowledge, the Funds have complied and will continue to comply with all laws, rules, and regulations having application to its business, properties, and assets the violation of which could materially adversely affect the Funds' and Viteos' performance of their obligations under this Agreement.

(iv) The funds are duly organized and validly existing under the laws of the Cayman Islands.

(v) To their knowledge, there are no administrative, civil or criminal proceedings pending or threatened against the Funds that could have a material adverse effect on the Funds' or Viteos' business or financial condition. The Funds are not aware of any other information that would be likely to have a material adverse effect on the Funds' or Viteos' business or financial condition.

The foregoing representations and warranties shall be continuing during the term of this Agreement and if at any time the Funds shall become aware of the occurrence of any event which could make any of the foregoing materially incomplete or inaccurate, the Funds shall promptly notify Viteos of the occurrence of such event.

(b)   Viteos hereby represents and warrants to the Funds as follows:

(i) Viteos has full power and authority and is permitted by applicable law to enter into and carry out its obligations under this Agreement and to own its properties and conduct its business as described in this Agreement.

(ii) The performance of the obligations under this Agreement by Viteos will not conflict with, violate the terms of, or constitute a default under any indenture, mortgage, deed of trust, loan agreement, or other agreement or instrument to which Viteos is a party or by which it is bound or to which any of the property or assets of Viteos is subject, or any order, rule, law, regulation, or other legal requirement applicable to Viteos or to the property or assets of Viteos.

(iii) Viteos has complied and will continue to comply with alt laws, rules, and regulations having application to its business, properties, and assets, the violation of which could materially adversely affect Viteos, performance of its obligations under this Agreement.

(iv) Viteos is a limited liability company duly organized and validly existing under the laws of the India.

(v) There is no administrative, civil or criminal proceeding pending or threatened against Viteos that could have a material adverse effect on Viteos' business or financial condition. Viteos is not aware of any other information that would be likely to have a material adverse effect on Viteos' business or financial condition.

The foregoing representations and warranties shall be continuing during the term of this Agreement and if at any time Viteos shall become aware of the occurrence of any event which could make any of the foregoing

materially incomplete or inaccurate, Viteos shall promptly notify the Funds of the occurrence of such event.

(9)     Indemnification

The Funds shall indemnify, hold harmless and defend Viteos from and against any loss, liability, claim or expense (including reasonable attorneys' fees and disbursements) suffered or incurred by Viteos in connection with the performance of its duties hereunder, including, without limitation, any liability or expense suffered or incurred as a result of the acts or omissions of the Funds or any third party agent whose data or services Viteos must rely upon in performing its duties hereunder, or as a result of acting upon any instructions reasonably believed by it to have been duly authorized by the Funds; provided, however, that such indemnity shall not apply to any liability or expense resulting directly from the fraud, gross negligence or willful misconduct of Viteos under this Agreement.

The Funds will be entitled to participate at its own expense in the defense, or, if it so elects, to assume the defense of any suit brought to enforce any liability subject to the indemnification provided above. In the event the Funds elect to assume the defense of any such suit and retain counsel, Viteos or any of its affiliated persons named as defendant or defendants in the suit may retain additional counsel but shall bear the fees and expenses of such counsel unless (i) the Funds shall have specifically authorized the retaining of such counsel or (ii) Viteos shall have determined in good faith that the retention of such counsel is required as a result of a conflict of interest.

The indemnification obligations of this Section 8 shall survive termination of this Agreement.

(10)    Proper Instructions. The term "Proper Instructions" shall mean instructions received by Viteos from the Funds or any person duly authorized by the Funds. Such instructions may be in writing signed by the authorized person or may be in a tested communication or in a communication utilizing access codes effected between electromechanical or electronic devices or may be by such other means as may be agreed upon from time to time by Viteos and the party giving such instructions (including, without limitation, oral instructions). All oral instructions shall be promptly confirmed in writing. The Funds shall cause their duly authorized representative(s) to certify to Viteos in writing the names and specimen signatures of persons authorized to give Proper Instructions. Viteos shall be entitled to rely upon the identity and authority of such persons until it receives written notice from the Funds to the contrary. Viteos may rely upon any Proper Instruction reasonably believed by it to be genuine and to have been properly issued by or on behalf of the Funds. The Funds shall give timely Proper Instructions to Viteos in regard to matters affecting its duties under this Agreement.

(11)    Duration:

This Agreement shall commence on the date hereof and shall continue in full force and effect for a period of two years and will be automatically renewed for subsequent 12 month periods, however provided that at the end of each 12 month period from the commencement or renewal of this agreement, both the parties may review the various commercial and service terms of this agreement. Either party may also terminate pursuant to Section 12 below.

(12)    Termination. This Agreement shall terminate as follows:

    (a)    Upon at least ninety (90) days written prior notice from one party to the other party; provided, however, that the Funds may terminate the appointment of Viteos at any time if Viteos

        (i)    commits any breach of its obligations under this Agreement and shall fall, within 30 days of receipt of notice served by the Funds requiring it to do so, to cure such breach; or

        (ii)    goes into liquidation or if a receiver is appointed of any of the assets of Viteos; or

    (b)    Immediately upon dissolution of the Funds.
Upon termination and settlement of any amounts due under this Agreement, Viteos shall return to the Funds any Confidential Information provided by the Funds to Viteos pursuant to this Agreement. All costs related to the transfer of data to the Funds will be borne by the Funds.

(13)    Entire Agreement. This Agreement and Exhibits A & B hereto constitute the entire agreement between the Parties hereto with respect to the matters referred to herein, and no other agreement, verbal or otherwise, shall be binding as between the Parties unless it shall be in writing and signed by the party against whom enforcement is sought.

(14)    Assignment. This Agreement shall not be assigned by either party hereto without the prior express written consent of the other party.

(15)    Amendment; Waiver : This Agreement shall not be amended except by a writing signed by the parties hereto. No waiver of any provision of this Agreement shall be implied from any course of dealing between the parties hereto or from any failure by either party hereto to assert its or his rights hereunder on any occasion or series of occasions.

(16)    Notices : Any notice required or desired to be delivered under this Agreement shall be in writing and shall be delivered by courier service, postage, prepaid mail, telex, facsimile or other electronic transmission, telegram, or other similar means and shall be effective upon actual receipt by the party to which such notice shall be directed, addressed as follows (or to such address as the party entitled to notice shall hereafter designate in accordance with the terms hereof):

If to Viteos:
Viteos Fund Services Ltd
21, Clyde Road,
Somerset,
New Jersey - 08873
Phone #: +1-732-873-7500
Fax#: +1-732-873-6905
Attn.: Ms Chitra Baskar

If to the Funds:
ElitePerformance Fund Ltd. Class H Shares
Distressed/High-Yield Trading Opportunities Fund Ltd.
c/o Access International Advisors LLC
509 Madison Avenue, 22nd Floor
New York, NY 10022,
Phone #: +1-212 223 7167
Fax#: +1-212 223 3463
Email aiausa@aiallc.us
Attn.: Mr. Bill Rapavy

With copies in all cases to:

Mr. Henry Bregstein
Katten Muchin Rosenman LLP
575 Madison Avenue
New York, NY 10022
Fax: +1 212 940 8563
Email: henry.bregstein@kattenlaw.com

(17)   Governing Law : This Agreement shall be governed by and construed in accordance with the laws of the State of New York (excluding the law thereof which requires the application of or reference to the law of any other jurisdiction).

(18)   Consent to Jurisdiction : The Parties hereto agree that any action or proceeding arising directly, indirectly, or otherwise in connection with, out of, related to, or from this Agreement, any breach hereof, or any transaction covered hereby, shall be resolved within the City and State of New York. Accordingly, the Parties consent and submit to the jurisdiction of the courts and any applicable arbitral body located within the City and State of New York. The Parties further agree that any such action or proceeding brought by either party to enforce any right, assert any claim, or obtain any relief whatsoever in connection with this Agreement shall be brought by such party exclusively in the federal or state courts, or if appropriate before any applicable arbitral body, located within the City and State of New York.

(19)   Survival : The provisions of this Agreement shall survive the termination hereof with respect to any matter arising while this Agreement shall be in effect.

(20)   Non-Solicitation.

During the term of this Agreement, and for a period of one (1) year after the termination hereof, the Funds shall not, directly or indirectly, either for themselves or on behalf of any other firm, person or entity, solicit to employ, employ or retain as a consultant or independent contractor, any person who currently is, or during the preceding six (6) month period was, known by the Funds or the Investment Manager to be in the employ of Viteos and/or its affiliates.

The Funds and the Investment Manager acknowledge and agree that due to the uniqueness of the services to be provided by Viteos' employees, and the confidential nature of the information Viteos' employees will possess, the covenants set forth herein

are reasonable and necessary for the protection of the business and goodwill of Viteos. The Funds and the Investment Manager expressly acknowledge the importance to Viteos of the covenants set forth in this Section 19, and recognize that Viteos would not enter into this Agreement and would not permit the Investment Manager access to Viteos' services without the Funds' and the Investment Manager's consent hereto.

(21)    Counterparts : This Agreement may be executed in counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument.

(22)    Headings : Headings to sections and subsections in this Agreement are for the convenience of the Parties only and are not intended to be a part of or to affect the meaning or interpretation hereof.

(23)    No Third Party Beneficiaries : This Agreement is not intended to and shall not convey any rights to persons not a party to this Agreement.

The Signature Page shall follow.

IN WITNESS WHEREOF, this Agreement has been executed for and on behalf of the undersigned as of the day and year first written above.

**VITEOS FUND SERVICES LTD**

By                               : _____
Name and Designation  : _____

Signature                    : _____


ElitePerformance Fund Ltd. -- Class H Shares

By                               : R. Thierry Magon de La Ville huchet
Name and Designation  : Director

Signature                    : _____


Distressed/High-Yield Trading Opportunities Fund .Ltd.

By                               : R. Thierry Magon de La Villehuchet
Name and Designation  : Director

Signature                    : _____

<u>EXHIBIT A</u>

Exhibit A – The following are the scope of services that shall be provided by Viteos on a month-end basis to the Funds

(a)     Month-end portfolio accounting

(b)     Preparation of monthly financial statements including P & L account, Balance Sheets, statement of income and expense, statement of partner's capital

(c)     Computation of month-end NAV

(d)     Investor Services:

        (i)      handle subscriptions, redemptions and transfers
        (ii)     Conduct AML checks
        (iii)    Send investor statements
        (iv)     Handle all investor queries
        (v)      Maintain fund investor records

(e)     Economic Allocations

(f)     Performance Fees / Management Fees calculations

(g)     Audit Support

<u>EXHIBIT B</u>

<u>Pricing</u>

<u>Fees for services rendered</u> (As per Exhibit A):

(a)    The fees for the 1st six months would be as under:

| Assets under Management (US $) | Service Charges |
|---|---|
| Upto $ 499.99 million | 20 bps |
| $ 500 mn – $ 999.99 bn | 15 bps |

The above mentioned fees shall be subject to a minimum of $ 7,000 per month.

(b)    The fees from the 7th month would be as under:

| Assets under Management (US $) | Service Charges |
|---|---|
| Upto $ 499.99 million | 15 bps |
| $ 500 mn – $ 999.99 bn | 12 bps |

The above mentioned fees shall be subject to a minimum of $ 6,000 per month.

(c)    In addition to the above, Viteos shall charge a one-time implementation cost of $ 25,000.

The fees shall be billed monthly and payable within 10 days from the date of the invoice